# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AARP,**<br><br>      **Plaintiff,**<br><br>      v.<br><br>**UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**<br><br>      **Defendant.** | **Civil Action No. 16-2113 (JDB)** |

## MEMORANDUM OPINION

Presently before the Court is [48] AARP's Rule 59(e) motion to alter or amend the judgment in this case. On August 22, 2017, this Court found that EEOC had not provided a reasoned explanation for its decision to promulgate regulations under the Americans with Disabilities Act (ADA) and Genetic Information Nondiscrimination Act (GINA) ("the Rules") that set particular incentive levels for providing certain medical data to healthcare providers. Mem. Op. [ECF No. 47] at 33. The Rules allowed employer-sponsored wellness plans to offer employees discounts of up to 30% of the cost of self-only health coverage for divulging certain private medical information, or to impose penalties of up to 30% for not doing so. Id. at 4; see 29 C.F.R. §§ 1630.14(d)(3), 1635.8(b)(2)(ii)–(iii). The Court found that EEOC "failed to adequately explain its decision to construe the term 'voluntary' in the ADA and GINA to permit the 30% incentive level adopted in both the ADA rule and the GINA rule." Mem. Op. at 33. However, in light of the potential for disruption were the Court to vacate the challenged Rules in the middle of a plan year, the Court decided to remand without vacatur "for the present." Id. at 35–36.

1

Now, "[t]o avoid manifest injustice," AARP asks that the Court reconsider that decision and either (1) vacate the Rules but stay the mandate until January 1, 2018, or (2) issue an injunction against enforcement of the Rules effective January 1, 2018. AARP's Mem. of Law in Supp. of Rule 59(e) Mot. to Alter or Amend the Court's Aug. 22, 2017 Order ("AARP Mot.") [ECF No. 48-1] at 1. EEOC opposes the motion, arguing that a 2018 vacatur of the Rules would be too disruptive for employers and employees. Def.'s Mem. in Opp'n to Pl.'s Rule 59(e) Mot. to Alter or Amend Order ("Opp'n") [ECF No. 49] at 1–2. EEOC has also indicated that it intends to issue a final rule in October 2019 that would be applicable, at the earliest, in 2021. Def.'s Status Report [ECF No. 50] at 1 & n.1. In its reply brief, AARP raises another alternative: vacating the Rules but applying the order of vacatur only to plans that begin at least six months after the order is issued. AARP's Reply Supp. Rule 59(e) Mot. to Alter or Amend Order and Response to Def.'s Status Rep. ("Reply") [ECF No. 52] at 7–8. For the reasons explained below, the Court will grant AARP's motion and vacate the challenged portions of the ADA and GINA rules. However, to avoid the potential for disruption, the Court will stay the mandate until January 1, 2019.

*    *    *

Motions to alter or amend a judgment under Federal Rule of Civil Procedure 59(e) lie within the discretion of the Court. Ciralsky v. CIA, 355 F.3d 661, 671 (D.C. Cir. 2004); see Black v. Tomlinson, 235 F.R.D. 532, 533 (D.D.C. 2006) ("[D]istrict courts have substantial discretion in ruling on motions for reconsideration."). While "Rule 59(e) is not a vehicle to present a new legal theory that was available prior to judgment," Patton Boggs LLP v. Chevron Corp., 683 F.3d 397, 403 (D.C. Cir. 2012), a Rule 59 motion may be granted if "there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice," Ciralsky, 355 F.3d at 671. There is no precise definition of what constitutes

"manifest injustice," Piper v. U.S. Dep't of Justice, 312 F. Supp. 2d 17, 22 (D.D.C. 2004), as amended (May 13, 2004), though the term obviously contemplates prejudice to the moving party.[1]

The Court's remedial decision in this case does not fall within the mine run of judgments subject to Rule 59(e) motions. This Court decided the issue without thorough argument from the parties. Neither side discussed the question of remedy in its summary judgment briefs. See Mem. Op. at 34. At oral argument, the Court asked each side what the Court should do if it determined that EEOC had not provided a sufficient explanation for the Rules; but neither party discussed its position in much detail, and neither addressed the legal framework used to determine whether vacatur is proper. See Tr. of Mot. Hearing [ECF No. 45] at 46:17–25, 65:6–66:17. This is therefore different from the common situation in which a moving party seeks to make an argument that it could have made previously on a legal question over which the parties already sparred in their briefing. See Ciralsky, 355 F.3d at 673.

EEOC argues that AARP cannot assert manifest injustice now because its summary judgment motion did not request vacatur when it could have done so. Opp'n at 7. But there are good reasons to reexamine the Court's prior holding here. First, the Administrative Procedure Act

---

[1] Both parties have treated the instant motion as properly brought under Federal Rule of Civil Procedure 59(e), rather than Rule 54(b). It is not entirely clear whether Rule 59(e) is, in fact, the correct vehicle for this motion. "Rule 54(b) operates while a case is still ongoing in district court and before any appealable final judgment has been entered . . . . Rule 59(e), in contrast, is a motion for reconsideration that is filed only after the district court's entry of a final judgment." Cobell v. Jewell, 802 F.3d 12, 19 (D.C. Cir. 2015). The order AARP seeks to amend remanded the ADA and GINA rules back to EEOC for reconsideration. In this circuit, "a district court order remanding a case to an agency for significant further proceedings is not final." Pueblo of Sandia v. Babbitt, 231 F.3d 878, 880 (D.C. Cir. 2000) (citation omitted). AARP's motion, therefore, may be better thought of as a request to revise a non-final judgment—which would invoke the Court's inherent equitable powers and Rule 54(b)—rather than as a motion to alter a final judgment under Rule 59(e). See, e.g., Butler v. United Healthcare of Tenn., Inc., No. 3:07-CV-465, 2011 WL 3300674, at *1 (E.D. Tenn. Aug. 1, 2011). The bar for successful reconsideration is lower under Rule 54(b) than under Rule 59(e). See Scahill v. District of Columbia, No. CV 16-2076 (JDB), 2017 WL 6333972, at *2 (D.D.C. Dec. 11, 2017) ("Unlike Rule 59(e), which sets a high threshold for parties to raise a new argument for the first time after judgment, . . . Rule 54(b)'s approach . . . can be more flexible, reflecting the inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires . . . ." (citations and internal quotation marks omitted)). However, the Court need not determine which Federal Rule governs here, because it finds that AARP can meet even the more stringent standards of Rule 59(e).

itself contemplates vacatur as the usual remedy when an agency fails to provide a reasoned explanation for its regulations. 5 U.S.C. § 706(2)(A) ("The reviewing court <u>shall</u> . . . hold unlawful <u>and set aside</u> agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ." (emphases added)). And while the courts do not always vacate in such circumstances, vacatur is "normally require[d]." Mem. Op. at 33–34 (quoting <u>Advocates for Highway & Auto Safety v. Fed. Motor Carrier Safety Admin.</u>, 429 F.3d 1136, 1151 (D.C. Cir. 2005)); see <u>Am. Bioscience, Inc. v. Thompson</u>, 269 F.3d 1077, 1084 (D.C. Cir. 2001). As AARP has asked the Court from the start to "[v]acate 29 C.F.R. §§ 1630.14(d)(3) and 1635.8(b)(2)(iii)," Compl. [ECF No. 1] at 27, and as AARP claims that remand without vacatur would continue the current harm to its members while EEOC formulates new rules, <u>see</u> AARP Mot. at 6–7, AARP's request deserves serious consideration.

Second, AARP's Rule 59 motion has allowed both parties to air their positions on the remedial question, thereby helping the Court to make a fully informed decision. Indeed, agency vacatur determinations are unusually well-suited to post-judgment briefing. See <u>Comcast Corp. v. FCC</u>, 579 F.3d 1, 11 (D.C. Cir. 2009) (Randolph, J., concurring) ("The briefs of the parties rarely discuss what remedy the court should impose if the agency loses. This is understandable. 'It may be impossible for petitioners, agencies, or intervenors to anticipate exactly how the court's decision will come out. . . . The upshot is that remand-only decisions are being made without sufficient information . . . .'" (citation omitted)); <u>see also</u> <u>Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers</u>, 255 F. Supp. 3d 101, 147–48 (D.D.C. 2017) (ordering parties to file post-judgment briefs on whether to vacate because summary judgment briefing barely discussed issue).

And third, the Court's initial opinion made clear that its remedial decision could be reexamined as circumstances evolved. The Court was particularly concerned about the

"potentially widespread disruption and confusion" that could be caused by vacating the Rules in the middle of the 2017 plan year, when employers and employees alike had been relying on the Rules for eight months. Mem. Op. at 35. But it provided the parties with numerous signals that the decision not to vacate was subject to change: the opinion stated that disruption concerns "currently" outweighed the agency's deficiencies in reasoning, that vacatur would be "inappropriate at this time," that the Court assumed the agency could come up with new rules "in a timely manner," and that the Court would remand without vacatur "for the present." Id. at 35–36. In light of the parties' briefing, therefore, the Court will take a second look at remedies.

"The decision whether to vacate depends on [1] 'the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly) and [2] the disruptive consequences of an interim change that may itself be changed.'" Allied-Signal, Inc. v. U.S. Nuclear Reg. Comm'n, 988 F.2d 146, 150–51 (D.C. Cir. 1993). In its prior opinion, the Court determined that vacating the Rules would punish the employers and employees who relied on them, and that the disruption vacatur would thereby cause outweighed the agency's serious failure of reasoning. Mem. Op. 34–35. AARP argues that the calculus is different for 2018—that stakeholders will easily be able to adjust to a vacatur that takes effect next year. AARP Mot. at 9–10; Reply at 4–6. It therefore requests vacatur effective January 1, 2018. AARP Mot. at 1.

This request would have been problematic even had AARP attempted to expedite the initial summary judgment briefing or asked the Court to conduct the Rule 59 proceedings on an expedited basis. There is significant evidence in the record that employers need to know the regulatory incentive structure for the following year by June or July, at the latest, in order to have enough time to design their wellness plans. See Opp'n at 2–5; AR 2576 (Commonwealth of Ky.), 2863 (ERISA Indust. Comm.), 3379 (Alston & Bird LLP), 3415–16 (Nat'l Bus. Grp. on Health), 3485

(Chamber of Commerce of U.S.), 3559 (Coll. & Univ. Prof'l Ass'n for Human Res.), 3649 (Epstein, Becker & Green), 7202 (Soc'y for Human Res. Mgmt.). Any order vacating the Rules therefore would have had to come several months prior to the Court's August 22 decision in order to avoid nationwide disruption. AARP's assertions to the contrary notwithstanding, see AARP Mot. at 4–6, the Court cannot simply assume that employers will be able to adjust their wellness plans on the fly, or that employees will be able to cope with a shift in their healthcare plans on such short notice. "The Commission is in a better position than the court to assess the disruptive effect of vacating the Rule[s]," Chamber of Commerce v. SEC, 443 F.3d 890, 909 (D.C. Cir. 2006), and it is clear from the record that vacatur is not a realistic option for early 2018.

Moving further into the future, however, the balancing test begins to shift toward vacatur. Courts in this circuit "have not hesitated to vacate a rule when the agency has not responded to empirical data or to an argument inconsistent with its conclusion." Comcast Corp., 579 F.3d at 8. Here, EEOC failed to take into account statutory and other concerns with its decision to set incentive levels at 30%. See Mem. Op. at 33 ("Neither the final rules nor the administrative record contain any concrete data, studies, or analysis that would support any particular incentive level as the threshold past which an incentive becomes involuntary in violation of the ADA and GINA."). This despite numerous comments pointing out EEOC's lack of reasoning and condemning the 30% incentive level as coercive. See id. at 22, 25–26, 32. As the Court has noted, EEOC's "lack of a reasoned explanation is a serious failing." Id. at 34. The first Allied Signal prong thus suggests that vacatur is the proper remedy here.

Meanwhile, the concerns about disruption that caution against vacatur in the near future disappear over time. Nearly all of EEOC's arguments against AARP's motion revolve around the harm that employers and employees would face if the Court were to vacate the Rules weeks before

the 2018 wellness plans come into effect. See Opp'n at 2–8. But unlike with 2018 plans, for which "[t]he egg has been scrambled," Sugar Cane Growers Co-op. of Fla. v. Veneman, 289 F.3d 89, 97 (D.C. Cir. 2002), there is plenty of time for employers to develop their 2019 wellness plans with knowledge that the Rules have been vacated. EEOC has suggested that businesses need six months' lead time to adjust to a change in the regulatory scheme, Opp'n at 3; the longest lead time for which any commenter asked during EEOC's notice-and-comment process was twelve months, see AR 3415–16 (Nat'l Bus. Grp. on Health), 3559 (Coll. & Univ. Prof'l Ass'n for Human Res.). Thus, vacating as of January 1, 2019 would appear to avoid any substantial disruptive effect.

Moreover, "the second Allied–Signal factor is weighty only insofar as the agency may be able to rehabilitate its rationale for the regulation." Comcast Corp., 579 F.3d at 9. It is far from clear that EEOC will view a 30% incentive level as sufficiently voluntary upon reexamination of the evidence presented to it. That "the agency's decision may very well be different on remand," Mem. Op. at 34 (citation omitted), further reduces the significance of the disruption prong of the vacatur test. And, since AARP's members could be pressured by their employers to give up private medical data as long as the current Rules remain in place, AARP can credibly show prejudice from a decision to remand without vacatur. Given this prejudice, and that the balance of the equities weighs in favor of vacatur in 2019, it would constitute manifest injustice to keep the Rules in place beyond 2018.[2]

---

[2] The Court's determination that the balance of the equities favors vacatur as of January 2019 differs somewhat from AARP's alternative proposal, which calls for applying the Court's decision to any plans "that begin six months or more after" the Court issues its opinion. Reply at 7–8. However, as noted above, there are indications in the record that some employers may need as long as twelve months to comply with a new regulatory regime. Additionally, some wellness plans do not follow the calendar year; providing a year's notice ensures that no employer will have its current plan disrupted, and will give all employers at least some lead time to adjust for the 2019 plan year. And, as discussed below, waiting to vacate until January 2019 gives EEOC more time to come up with new interim or permanent rules. Thus, a vacatur decision that takes effect early in 2019 would best balance the need to protect employees' privacy with the need to avoid disrupting healthcare plans nationwide. In the Court's view, such a decision ultimately does not conflict with AARP's request to "issue an order of vacatur effective as soon as practicable after January in 2018." Reply at 8.

It is also noteworthy that, since the Court issued its August 22 decision, EEOC has provided new information regarding its rulemaking timeline. See Def.'s Status Report at 1 & n.1. Though AARP did not provide (and could not have provided) this information in its initial Rule 59 motion, the information is properly before the Court as the Court considers AARP's motion. According to EEOC, the agency does not intend to issue a notice of proposed rulemaking until August 2018, and does not plan to issue a final rule until October 2019. Id. at 1. Thus, EEOC adds, because of the time required for employers to come into compliance, any new final rule "likely would not be applicable until the beginning of 2021." Id. at 1 n.1. EEOC also hints that the process could take even longer as it starts to look into the substance of the issues involved and as new nominees eventually join the Commission. Id. at 1–2.[3] If left to its own devices, then, EEOC will not have a new rule ready to take effect for over three years—not what the Court envisioned when it assumed that the Commission could address its errors "in a timely manner." Mem. Op. at 36. This new evidence bears on the vacatur question, and it provides another strong reason to reconsider the Court's original remedial decision. See Ciralsky, 355 F.3d at 671; Int'l Union, United Mine Workers of Am. v. Fed. Mine Safety & Health Admin., 920 F.2d 960, 967 (D.C. Cir. 1990) ("The court would reconsider vacating the order, however, upon a showing that the Assistant Secretary was not proceeding with reasonable diligence on remand.").

\* \* \*

For these reasons, the Court will grant AARP's motion to alter or amend the judgment, and will vacate the challenged incentive portions of the ADA and GINA rules, 29 C.F.R. Sections 1630.14(d)(3) and 1635.8(b)(2)(iii). However, the Court will exercise its discretion to stay the

---

[3] The two nominees EEOC has mentioned have yet to have a final confirmation vote scheduled, and may be subject to further hearings. See PN 724, Janet Dhillon, Equal Employment Opportunity Commission, https://www.congress.gov/nomination/115th-congress/724; PN 859, Daniel M. Gade, Equal Employment Opportunity Commission, https://www.congress.gov/nomination/115th-congress/859.

effective date of its vacatur order until January 1, 2019.  See Friends of Earth, Inc. v. EPA, 446 F.3d 140, 148 (D.C. Cir. 2006) (stating that "[t]he district court retains some remedial discretion" to stay an order of vacatur).  Because the Court issued its summary judgment decision in August 2017, EEOC will thus have had a total of over sixteen months to come up with interim or new permanent rules by the time the vacatur takes place.  The Court will also hold EEOC to its intended deadline of August 2018 for the issuance of a notice of proposed rulemaking.  See Def.'s Status Report at 1.  But an agency process that will not generate applicable rules until 2021 is unacceptable.  Therefore, EEOC is strongly encouraged to move up its deadline for issuing the notice of proposed rulemaking, and to engage in any other measures necessary to ensure that its new rules can be applied well before the current estimate of sometime in 2021.  A separate order has been issued on this date.

/s/
JOHN D. BATES
United States District Judge

Dated:   December 20, 2017